Ramona Featherby, dba
California Judicial Recovery Specialists
3344 McGraw Street
San Diego, CA 92117-6053
800-354-9496 • FAX 866-531-7174
californiajrs@mac.com

Assignee of Record/Judgment Creditor



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ULRICH RISCHER, an individual<br><br>Plaintiff,<br>vs.<br><br>BANLAVOURA I, INC., et al<br><br>Defendants | Case No. CV 96-3886 SJO (RNBx)<br><br>CREDITOR'S REPLY TO FOX ROTHSCHILD'S OPPOSITION TO AN ORDER OF CONTEMPT<br><br>**Hon. S. James Otero**<br>Date: August 16, 2010<br>Time: 10:00 a.m.<br>Place: Courtroom 1 |

    The Assignment Order consists of four distinct parts: Paragraph 1 describes the assigned rights; ¶ 2 sets out a list of those enjoined from interfering with the rights assigned; ¶ 3 and 4 identifies entities from which monies or assets are to be diverted; and ¶ 5 defines the duration of the order. Each part has a specific purpose and together, all are imperative to the existence of a sound, enforceable order.

    Fox Rothschild leads with the argument that only the obligors in paragraphs 3 and 4 are bound by the Court's Order and that Featherby is moving against the "wrong party".[1] This implies that paragraph 2 is of no force and effect. Fox

---

[1] Fox is not the 'wrong' party. They are one of many obligated to either perform certain acts or enjoined from undertaking others. Each must answer for its own transgressions.

knows this to be a spurious argument. The question of whether attorneys could or should be enjoined from receiving payments from those named in ¶ 3 was hotly contested in the Esacoves objection and soundly defended by Featherby on reply. The court found in Featherby's favor and set a course where "<u>Judgment Debtors, as well as their</u> respective principals, agents, partners, managers, <u>attorneys</u>, employees, servants, heirs, assignees, successors, representatives and all persons acting under, in concert with or for them, <u>are hereby enjoined from receiving</u>, transferring, assigning, disposing, interfering with, or encumbering <u>any of the assigned current or future rights to payment</u> due Judgment Debtors pending further order of this Court.." [Order: ¶2]. Fox cannot pretend that paragraph 2 does not exist as a distinct and meaningful Order of the Court directed to an audience wholly separate from those named in ¶3. Their argument makes no sense. Paragraph 3 speaks to those from whom the debtors may receive payments and ¶2 addresses those who, if not enjoined, may unlawfully aid the debtors in thwarting the Order. Fox's contention that those named in ¶2 are free to ignore the Order re-opens the very door the Court sought to close in crafting paragraph 2.

Act II finds Fox Rothschild re-writing the Order to justify their defiance. As though the Court could be fooled by a play on words, Fox plucks three terms from the 14-word description in ¶1 and defines them to fit their argument. Throughout their opposition, Fox claims that the Court assigned Featherby the right to receive "proceeds, commissions, and payments". Fox omits the remainder of the sentence which expounds upon what is included in the category of "payments or proceeds". The full measure of the assignment holds: "That <u>the following rights to payments or proceeds,</u> **including** fees, royalties, commissions, bonuses, securities, properties, annuities, or other such interests, assets, earnings, **future distributions** and bequests belonging to [debtors]…are assigned to [Featherby]…" [Order: ¶1].

Worse, the definitions presented by Fox were taken from a 30-year-old version of Black's Law Dictionary. Though Featherby was unable to procure a

copy of the rare 5th Edition, circa 1979, it is doubtful that the term "distribution" was omitted from it or that Fox was unable to avail itself of a more recent edition. For the record, the term "distribution" presents in Black's 9th Edition (2009) as *"The act or process of apportioning or giving out"*. The legal definition does not restrict the term "distributions" to that which one has 'earned', nor does it omit 'loans'. EVMC "distributed" monies to Fox Rothschild to satisfy the Esacoves' debt. These are the undeniable facts.

Fox continues its play on words by alleging that because the monies they received were from "loans" made to the Esacoves, Fox could not therefore be in violation of the Order. Even if one were to believe that the payments tendered to Fox were borne of a legitimate lending transaction (a notion to which Featherby does not subscribe), technically, what Fox received were "loan proceeds" belonging to the Esacoves. "Loan Proceeds" are defined as "the net amount disbursed by a lender to a borrower, under the terms of a loan agreement[2]." By any measure, "Loan Proceeds" fits within the scope of the Assignment as "proceeds" "belonging" to the Esacoves. [Order: ¶1].

Fox's assertion that the EJL does not include loans as a type of payment properly includable in an Assignment Order is a protest made too little, too late. As a matter of law, the only restriction to an Assignment Order is that the assigned rights must be assignable in nature. *See*: Legislative Committee Comment to Cal. Code. Civ. P. § 708.510. The mere fact that the Esacoves "assigned" their "loan proceeds" to Fox Rothschild is proof that the funds are assignable in nature. Moreover, the proper time to challenge the substance of the Order was in 2008. Fox cannot, in the midst of a motion for contempt, challenge the Order on which its violations of it are based. *United States ex rel. Bowles v Seidmon* 154 F2d 228 (1946).

---

[2] [See: http://www.businessdictionary.com/definition/loan-proceeds.html].

Fox Rothschild takes the position that it would be inequitable to interpret the Order from prohibiting the Esacoves from paying its current obligations. The irony here is that the Order does not prohibit the Esacoves from paying its debt to Fox Rothschild. The Esacoves were free to pay Fox <u>directly</u> for the services Fox rendered to them. But for the Esacoves' scheme to shield their assets from levy or seizure by concealing their riches in one of their shell corporations and Fox's willingness to turn a blind eye to the source of the payments, we would not be here today. All parties took the low road and were caught. They must now face the consequences.

Fox Rothschild had a legal obligation to take all reasonable steps to ensure they were in compliance with the Order. *Shuffler v. Heritage Bank,* 720 F.2d 1141, 1146 (9th Cir. 1983). Looking up a few select words in a thirty-year-old dictionary does not constitute "all reasonable steps". Relying upon the word of a client who himself is working diligently to avoid paying a $12,000,000 debt is also a fool's errand. Judgment debtors advance arguments to delay, hinder, and defraud their creditors all the time. The Esacoves are no exception and Fox knows it. They happily detail the character of their former client in the verified complaint they filed in *Fox v. Esacove*. [*See* Riordan Decl. Exhibit B], e.g.:

> "…EVMC is a mere shell, instrumentality and conduit through which [the Esacoves] carry on their business in the corporate name, exercising complete control and dominance of such business to such extent that any individuality or separateness of said corporate defendant does not exist…." [¶6]

> "Defendants purposely strung along Plaintiff knowingly maximizing the amount of professional services provided on their behalf." [¶21]

> "Defendants further admitted that they have income, are using and enjoying that income for their own purposes, but are not using it to make payments on their debt." [¶25]

"Defendants' actions were willful, wanton, malicious in bad faith, and oppressive, and were knowingly undertaken with the intent to defraud and inflict injury onto Plaintiff..." [¶63]

It is also without reason that Fox would rely upon the two exhibits tendered by the Esacoves to save them from a contempt order without first verifying their veracity. At the very least, Fox has a legal obligation to authenticate documents they submit into evidence. Anthony Chopra is the sole signatory on both documents. A phone call to confirm that he had indeed executed them was the least of measures Fox should have taken. They did not. Had they done so, they would have discovered that the documents are forgeries. [Chopra Decl. ¶5].

It is not a requirement that a lawyer believe everything a client tells them, nor is it incumbent upon them to verify every statement and authenticate every document produced in the course of their representation. However, when the Court enters an Order enjoining a firm from undertaking specific acts, logic dictates -- and the law requires -- that they take <u>all reasonable steps</u> to ensure that they are not in violation of the Order. Fox Rothschild failed to do so.

When Fox was served with the Order, a new relationship was formed. One, not of the attorney-client ilk, but one as between a litigant and the Court. From that point, Fox had a duty separate and apart from its representation of the Esacoves to ensure it was complying with the Court's Order. Fox did not take this duty seriously. It is likely that Fox did not anticipate that Featherby would acquire a judgment against EVMC, delve into the company's bank records, and discover the truth. They were wrong. Fox Rothschild rolled the dice and were caught. They must now face the consequences.

Finally, Fox Rothschild alleges that some of the monies they received were to pay for debts EVMC owes to them. The only evidence submitted to support this notion is the declaration of Staci Riordan, which does not square with the facts in evidence. By their own admission, the six payments for $125,000 Fox received

between March 12 and June 22, 2009 are a "*Summary of Esacove Payments to date*". In their complaint against the Esacoves, Fox admits that they received a good faith payment of $25,000 from the Esacoves in September of 2009. The Citibank check for $15,000 dated July 7, 2009 shows that the remitter, Lawrence A. Esacove, instructs that the funds be applied to the account of Client #56060; the account number assigned by Fox Rothschild as pertains to this case.

In a civil contempt proceeding, the "'moving party has the burden of showing by clear and convincing evidence that the contemnor violated a specific and definite order of the court." *FTC v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). The burden then shifts to the contemnor to demonstrate why he has been unable to comply with the order. *See Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999) (citing *Stone*, 968 F.2d at 856 n.9).

Fox Rothschild readily admitted that they received payments from EVMC to satisfy the Esacoves' debts. This is a direct violation of the Assignment Order. Featherby has met her burden. Fox has not demonstrated to the Court why they were "unable" to comply with the Order, only that they chose not to.

Respectfully submitted,

Dated: 7-30-10

Ramona Featherby, dba
California Judicial Recovery Specialists
Judgment Creditor